Good morning. The first argued case this morning is number 16-2296, Adams against the United States. Mr. Tonley. Good morning, your honors. It's a privilege to be back in your courtroom. With your permission, I'd like to begin and briefly address the first claim, which is that he is presently owed money and that the board did not provide full and fitting relief in regard to his claims for medical, dental, and other expenses, and didn't subsequently address the combat-related special compensation claim, if that's appropriate. There are three considerations that we would like to bring to the court's attention that we think should guide its analysis of this particular claim. And the first is in Roth v. United States. This court made clear that when the military records correction boards finds an error or an injustice, it must take, quote, such corrective action as will appropriately and fully erase such error or compensate such injustice. Similarly, the D.C. Circuit in Dilley v. Alexander concluded that the authority of the board, the duty of the board, is to make service members and veterans whole. Second, 10 U.S.C. section 1552, the statute that governs the correction board is a remedial statute and therefore should be given liberal consideration. And the third consideration, which may be the most important, is that Major Adams is a United States Air Force graduate. He was an officer in the United States Air Force for 11 years. He was a pilot. He served our country at the time of the war, and he largely sacrificed his health for us. Can I ask this? Am I wrong in thinking there are two concrete things that this case is about? One is the combat-related classification, which you haven't yet talked about. And then the other is an argument that your client should have been treated by the board as if he had not been, as if he were still in the service, particularly during that year when he got the expensive surgery. Yes, Your Honor. That is an alternative that they had available to them. Right, but I guess here's my question. The Court of Federal Claims has jurisdiction based on money-mandating statutes. At the bottom of the claim that he should have been treated as if he were still in the military, aren't you saying that there must be a mandatory duty enforceable by money that he should have been retained during that year? And I'm not sure where that's coming from. The claim is that the board, in correcting his record, had a couple of options. One, they could have just stated that he was extended on active duty orders for a certain period of time, whether it was one year or six months, or what have you. They have that authority, and we did cite a couple of cases to the court. Maybe I can put the question this way. In order for that to be a litigable claim in the Court of Federal Claims under the Tucker Act, wouldn't that duty have to have been a mandatory one on the part of the Board of Corrections or the Secretary? And at least as I'm not recalling that you pointed to anything, any statute that says, in these circumstances, the service member must be retained during the period that's relevant here. Only maybe, and we've said several times that these may statutes don't generate Tucker Act claims. I don't think that that specific claim was made to the Court of Federal Claims prior. I don't think that specific claim was. It would be, in effect, a constructive service credit claim that he would be entitled to back pay under 37 U.S.C. Section 204A. I don't believe that that was specified in the complaint as a basis, so I may be wrong. That's part of my concern here, is that I think that had I been making this assessment in the first instance, I might have said full, fair, and fitting relief included exactly what you're talking about, but I don't know that we have any authority to second-guess that determination. The authority, the parameter, is really from the Roth decision. We've argued in the brief that the Board just doesn't have unbridled equitable discretion. There are parameters, and those parameters are established, one, by the Air Force's own regulation, which requires full and fitting relief. The second are by the decisions of this Court, and also from the D.C. Circuit as well, to make whole relief, to put the service member in the position that he or she would have been but for the error and injustice. But your citation to the fact that others were corrected in a different way, to treat them as having been on duty but on leave prior to their retirement, you're not claiming that he was treated in a way that was unfair vis-à-vis those other service members, are you? Not specifically, Your Honor, because there was another alternative, which is in this convoluted, indirect manner is what unfolded. The Board never specified in its decisions whether he was entitled to retroactive medical care or dental care or compensation for his moving expenses or his travel expenses for any of that. They said, we don't have authority to do that. They clearly do have the authority, and we cited a number of the Board's cases where they specify amounts of money that they're paying for someone. Some of that's been corrected, though, correct? What has been corrected, it was done really by Captain Phillips of the United States Air Force. Bless her heart. She took initiative on this. She interpreted the Board's decision as authorizing him to receive TRICARE retrospectively. The situation with the TRICARE, let me back up. The general claim is that he's presently owed money, even based upon the relief that was granted and the steps were taken. The basic issue here is that they did not go through his medical expenses claimed and dental expenses and compare against the policy that he had, which is a continuing health care benefits policy. Compare that against the policy he would have had, had he been medically retired in the first instance, and determine which claims are allowable and which claims are not. What they compensated him for were his premiums that he had paid to the Treasury for the continuing health care benefits program, but he also has premiums that he paid to private insurance companies that were not addressed by the Board's decision. Where we're taking that is to say the Board needs to put its mind to this. It needs to fully consider an applicant's claims and it needs to address each one of those claims. The action that it took in this case, which is just to say, we're going to medically retire you without specifying anything else, breaches its legal duty under the statute. Do you believe that we or the Court of Federal Claims would have the authority to second-guess the disability retirement determination, given that there were doctor's determinations, whether I agree with them or not, that they relied upon? Whether he was disabled or not, Your Honor? Yes. No. The court could weigh the procedure, but that's not an issue because they did find him to be 60% disabled. That was retroactively made effective to 1 July 2006. That aspect of things was taken care of. The remainder on the money side, setting aside CRSC, are a surgery that he had to have that he was unable to obtain even after diligent effort through the VA that cost him about $32,000 that the Board didn't address. The premiums he paid to a company called Asurus Healthcare to the University of Iowa Healthcare were never addressed by Defense Finance and Accounting Service. They certainly weren't addressed by TRICARE, which manages the retiree healthcare. Do we have any authority over TRICARE, though? Can we order TRICARE to do anything or does he have to deal with TRICARE? I'm not sure I understand the question, Your Honor. Isn't that one of the points that the Court of Federal Claims said? Yes, there might be some issues that you have to deal with, but you need to settle those with the appropriate agencies, including TRICARE. I think the point, Your Honor, we would make is TRICARE is not the agency he needs to deal with. He needs to deal with DFAS. The CFR for the Board states the Board makes the records corrections. It needs to specify the relief. Defense Finance and Accounting Service then is charged by law with computing what the veteran is owed. In this case, DFAS said, well, we don't think we can help him in terms of figuring out what medical expenses were valid and could be recoverable by him. They sent him to TRICARE. That's not in conformity with the statute. TRICARE provided him an email. The most detail that he received was an email from Ms. DeAnton at TRICARE saying, there may be some difference, but there also may be some increase. Well, provide a number. Go through each of the claims and provide him a number. Is he owed anything? If it's $50, he's owed $50. If it's $5,000, he's owed $5,000. Address it. That didn't happen. What we're getting at, these boards have an extraordinary responsibility. Most often, they're the tribunal of first and last instance for service members. Very, very few cases come before the courts. So it's extraordinarily important that they discharge their duties properly and comprehensively. So that's the gist of the claim on this point. Can you tell me precisely what the relief is that you think we can order and that you want us to order? What I would recommend the court do is remand the matter back, reverse the court's decision, remand the matter back to the AFB-CMR with guidance from Roth or other decisions, finding that they did not make whole relief, providing that calculations remain to be undertaken, that they haven't addressed his... He's entitled as a matter of statute to dental care retroactive to his date of retirement. That has never been addressed. They sent him to a private dental insurer, which said, we can retroactive you to 2011. That was the best he got out of the dental. He has $5,000 of dental expenses during this early period of post-discharge. But you're focusing solely on these, and I'm sure they're important, but I'm going to refer to them as incidental costs at this point. You're not asking for what you described as the ability to have retroactively be considered on active duty for a period of time. Not specifically, Your Honor. It is an option that the board would have if the matter were remanded. If I were representing before the board, that's the option I would press upon the board. It's the cleanest, it's the simplest way to discharge of these disputes. Not to go through some comparison between the policy he had and didn't have and how that policy changes over time. Just say, the man continued to serve on active duty until, let's say, November 16, 2007 when his surgery was completed. That takes care of the problem. There's no question that they can do that. They have that authority. Am I making myself clear, Your Honor? What we're getting at in the gist of this is the failure of the board, one, to specify what he was entitled to. As a consequence of that, he had to go hand-in-hand to... First, DFAS says they're not responsible. He has to go hand-in-hand to Tricare, then he has to go to Delta Dental of California, a private corporation. That's not what Congress intended. That's not full and fitting relief. Your Honor. Thank you. Let's hear from the government. Because I want to ask Mr. Laufgren, do you agree with the proposed paths for full relief for the veteran? Your Honor, the Corrections Board already determined that the relief that was provided to Major Adams, namely a correction to provide him with a disability retirement as opposed to a voluntary separation, constituted full and fitting relief. They identified error and justice in his separation, and they corrected his record to remedy that injustice. And by doing so, they provided him with very significant and meaningful benefits, including back pay and disability retirement. His dispute is an insurance coverage dispute. It's a dispute with Tricare about whether or not they'd cover his back surgery. But he says it's with DFAS because DFAS can provide the information to Tricare that would basically give them the vehicle to pay for that. Well, Tricare is a government program, but it's managed by contractors. The government wanted to get out of the business of deciding insurance claims, so they contracted with experts in doing this, with insurance companies. And so what the insurance company will cover or will not cover is a matter of the insurance company's policy. But they determine what they're going to cover based on the information that the government gives them, right? Well, they determine what they're going to cover based on – sorry, is it your question whether their policy is regulated by the government? So you have to have some metric to determine what you're going to cover, right? Yes. And the metric is the information that's provided to them by DFAS, right? Well, yes, and that's why they refunded him with his premiums. I mean, first of all, there are two misconceptions that I think underlie the appellant's argument. And one is that he didn't somehow receive Tricare. But the record reflects that he did obtain insurance coverage under Tricare, and he had received reimbursement for medical expenses. Tricare paid their portion of his insurance claim. Basically, he paid what every other retiree paid. But expenses after the date of his surgery. And before. He had medical expenses after he left the military for doctors, MRIs, all the things that he needed to do in order to get medical treatment. And his insurance coverage at the time was through Tricare. Tricare, you know, and what he paid, he paid, the difference between what he paid and what a retiree would otherwise pay is premiums. So he had to pay premiums. If you're a retiree and if you were retired in the ordinary course, what he would have done is he would have paid for Medicare Part B because he would have been eligible for Medicare. Okay, so this issue is now before the court. And the question is, who has the power? Let's say, let's assume at the moment that we think Tricare, we think a mistake was made and that there should have been additional reimbursement. We seem to be in some strange kind of gap as to where the authority lies to instruct that that mistake, assume it was a mistake, to be corrected. His relief would be to, is through the Tricare appeals process. The board never decided whether or not he's entitled to any sort of payment for any particular procedure. Was that within their scope? It seemed to make a good deal of sense as the board. They corrected the records. That's their role in life. Now we have a different situation. Now what happens is veteran went to the court, say, all right, consider, determine, and enforce the consequences having gone through the previous proceedings. And we seem to be in some sort of limbo as to where that authority lies. The authority to determine, it would be, he could sue in district court. It would be like suing your insurance company. If you say that you're entitled to some sort of coverage under your policy with Aetna or with United, you would ostensibly, after exhausting your appeals process, you would sue them in their state or federal court. But it's a monetary claim against the government. That's the court of federal claims, not the district court. It's not a monetary claim against the government. It would be a claim against the insurance company. It would be against the insurance provider. So this veteran gets a straightforward correction of his military records, and he's got to go through two separate federal courts, who knows what else, find representation, take however many years all this takes for what to him is a significant sum and what in the reality of federal litigation one blinks at. And yet it looks as if the claim may be valid. What, in fact, surely there's a more straightforward path. Well, let me show you in the record what happened. And I think this is really what was supposed to happen. If you look at appendix 575 in the record, what he did is before seeking the surgery, he approached TRICARE. And this is in November of 2007. This is now 18 months after he separated from the military. He approached TRICARE, will you cover this? TRICARE explained to him that they would not authorize him to obtain surgery in Germany. In consultation with his doctors, he made an informed decision as a patient that he's going to go to Germany to obtain this medical care. They don't do, as a general practice, as I understand it, it was not FDA approved, or at least that's what's in the record at appendix 80. According to his timeline, there is not FDA approval of this procedure that he sought to obtain in Germany. So he went to Germany and obtained treatment at Stenum Hospital. After he returned, he filed a claim for TRICARE for emergency care. This is on the following page. And TRICARE denied that claim. He appealed it. TRICARE denied it again. He sought reimbursement from the Veterans Administration. They denied his claim. His remedy, you know, in such a situation would be to pursue either further, you know, appeal rights or to file a suit. But that's not what happened. The insurance company advised him that they were not going to pay for this. It was outside the scope of his policy. I'm sorry, outside the scope of the policy. TRICARE's policy. That he would have had, had he been a disability retiree? Absolutely. Okay. That seems to me the crucial point. I think what you keep saying is that the exact same policy that he did have is the policy he would have had, had he been retired for disability. And all, therefore, that the board had to do was to say you had to have a disability retirement. The change is a change in premiums but not a change in coverage. That's right. Is that your argument? That is my argument. He has not received less than other retirees would have received. He has received everything that he is legally entitled to receive. The corrections that the appellant has proposed are equitable corrections that he never requested, first of all, to the board. And their determination of whether or not error and justice exist to implement such corrections is, there's no test and standard by which the court can measure whether or not that such a decision was arbitrary and capricious or unlawful. I mean, these are discretionary corrections made by the board acting on behalf of the secretary. Unless there's some sort of procedural violation or something that they did incorrectly here, I mean, what the board considers to be error and justice is really its discretion, and they did identify error and justice. Can I just double check something? When you say it's discretion, is the consequence of that that that's not litigable through, was it the Military Pay Act or some, under the Tucker Act, that's not litigable, or just it's reviewable but it was not, you know, it was not reversible or something? Well, there are portions that to the extent it's reviewable. If the argument is that they misapprehended the scope of their authority, that the board, you know, misapprehended the scope of its authority, for instance, that's reviewable. But as to what constitutes error and justice or full and fitting relief, there's no metric or benchmark by which this court can measure whether or not the correction he received, the correction he requested, constitutes full and fitting relief. I mean, I think the important point is the one that we just discussed before, is what the board did here was operate within the framework in which it exists. The board corrected his record. He received checks for back pay. He receives ongoing checks for disability payments. He received a correction to the record to show that he's entitled to moving expenses. With respect to his dental expenses, the record shows that the majority of the dental expenses were incurred after he had the correction received to his record. And Delta Dental said, we will retroactively reimburse you to cover the scope of those 2011 medical dental expenses, but you have to pay premiums. You have to pay exactly what the other retirees pay. And the record doesn't indicate whether or not he paid that or he decided he elected to obtain coverage through Delta Dental. But the point is, he is receiving, and he received what other retirees, similarly situated retirees. You're telling us that he received what he was entitled to. He says otherwise. Where does he have the opportunity for review of whether, in fact, he received everything that was appropriate? To the extent there's something monetary that he says I'm entitled to receive, he would speak to DFAS. DFAS is the one who, by the regulation cited by both parties and contained in the appellant's brief, 865.1, 32 CFR 865.1. The DFAS is charged with computing the amounts due. It's a complex financial calculation given taxes and VA disability payments that Major Adams had received. You're arguing the merits to us. Is it accepted by the government that this path of review was appropriate on the merits, on the substance? That the boards review and the Court of Federal Claims review? Everything that's before us that we're debating. Yes, yes, absolutely. The one time where we did identify an error in procedure, Major Adams correctly notified us that there was a requirement. This is in connection with a combat-related special compensation claim, that the board was required to obtain an advisory opinion from the office of the undersecretary. We said, you are absolutely right. We sought a remand in order for the board to obtain such an opinion and consider such an opinion. In this case, the board followed all of the rules it was supposed to follow. Everything happened the way it was supposed to happen. Let me ask you this, though. Full and fair relief, that's what the standard is that the board is supposed to be striving for, correct? Yes. Is there anything more that it could have done to make sure that all of these expenses were covered? Any other correction that could have occurred? To the extent there's some hypothetical correction that could have occurred, one, Major Adams didn't necessarily raise it to the board that he should have been on active duty until 2007. That's new. That was never even raised below. But that's obviously something the board has been doing in the past and could have easily done. Whether he understood that that was an option for him or not is a different question. Well, in this case, the board looked at the record and they determined that the correction that they provided constituted full and fitting relief. He made the argument it wasn't full and fitting relief. He said, given the circumstances, we're reviewing this case on the merits. You know, correcting your record to show, as opposed to a voluntary separation, a disability retirement with TRICARE eligibility with all of the incidents that you get as a result of a disability retirement. But the disability retirement now is corrected to show that it occurs before the surgery. It is. The disability retirement is retroactive to July. Right, but it could have been done the other way. What? It could have been done the other way. Not necessarily because his argument was that I was not fit for service at the time I was discharged. So he actually withdrew a prior claim for a retroactive pay and promotion because he said I was not fit to serve by the time I retired. Right, but some of the others that you found not fit to serve, you carried over on active duty, but on leave, right? On disability leave. I'm not exactly sure of which particular case we're referring to, but hypothetically, the board does have broad discretion to correct error and justice, and the board's make whole power as to what constitutes full and fitting relief is something that the board is entrusted to decide. There's nothing by which this court can really gauge whether or not the board went far enough without saying, this isn't a case where we say we're going to medically retire you, but that's it. We're not going to allow for pay. That wasn't what happened. They said, we're going to medically retire you, and you get what you're entitled to receive as a result. And that's what happened. So, you know, given these circumstances, I see my time is up. We respectfully request that the court affirm the judgment below. Thank you, Mr. LaFleur. Okay. Your Honor, would you prefer that I respond to the medical claims? We haven't touched upon the combat-related special compensation issue yet. Three minutes is a short period of time in which to do so. What would the court's preference be? Is that claim, I mean, I wasn't clear from your first presentation whether you were continuing to pursue that claim. Absolutely, Your Honor. Okay. And how do you think it is that we can adjust that? What needs to occur there is the determination that, in fact, the directive type memorandum, the interpretation of the statute of 1413A by the Department of Defense is erroneous, certainly as it pertains to the condition of hazardous service, and remand that also back to the board and instruct the DOD to reissue guidance on that particular point. The underlying problem here is one that they impose a direct causation requirement, the DOD does, where the Congress did not. So they're not entitled to redraft the statute. Closely related is that it requires that an applicant show that his or her underlying medical condition was the direct consequence of the hazardous service. Now, that runs contrary to 1413A, Congress incorporated the law in the VA, not necessarily wholesale, but the definition of disability. It states that under the combat-related special compensation, disabilities that are compensable under the VA also may be compensable. Do you believe we would have to reach the conclusion that their interpretation of 1413A is not a reasonable one? That would be the best outcome, not just for Major Adams, but for all other applicants I think preceding and following, because I think it's plainly inconsistent with the statute as we have explained. Even if the court were not to go there and just consider the merits of his claim, I think the court could reverse on that as well, because the evidence does show that his condition, worsened after the bathroom fall of 2004. That's a substantial evidence review that does limit us, right? Correct, Your Honor. But the evidence is there that contradicts, and I think that outweighs the opinion that was issued by the AFB-CMR medical consultant, because there is no other event to explain the changes in his MRI that occurred. The board physician conceded, in fact, that flying an aircraft for extended periods of time during a deployment, can cause these conditions to happen, and can certainly aggravate those conditions to happen. He did not find that because he said he presented no proof, that his underlying medical conditions were the direct result. That's the improper standard. So the improper standard that was implied, because think about this. If Congress intended for pre-existing conditions, to be included within the scope of Section 1413A, which it did, because a pre-existing condition that is aggravated to the point of disability, is compensable under the law of the VA. Therefore, it's compensable under 1413A. If you require an applicant show that his or her injuries are the direct result, not the disability, because the disability is the impairment as this court well knows. There's a distinction between the underlying condition and the disability. If you're requiring that an applicant show that the underlying condition was caused by, then no applicant with a pre-existing condition, or any condition that existed prior to the service in question, can prove that. Well, unless he can prove, and I thought that the board and the Court of Federal Claims both agreed, that it would have been enough if he proved that his underlying condition worsened, as a result of the hazardous duty, or whatever the particular category is, but not that symptoms were flared up as he was doing those things, and that it came down to a factual determination, kind of a debate between the two doctors, about whether that in fact occurred. But that's inconsistent with the VA's definition of aggravation. Aggravation is not aggravation of the underlying medical condition, the disease or injury. It's an aggravation of the impairment. It's a worsening of the impairment over time. If you look at the ADA, for example, how it defines a disability, disability is the impairment. This court has affirmed in Davis v. Principi, the VA's construction, disability is the impairment. It's not the underlying condition. I have underlying conditions, but they're not a disability, because they don't impede my ability to do my job or my life. You have lots of service members on active duty with serious medical conditions, but they're not found to be disabled until the manifestations, or until they're impaired such that they can no longer perform their duties. It's a very crucial point to understand. It's slightly subtle, but the way the DOD has constructed this, you'll see, it excludes anybody but those who incur, as a direct result, incur the underlying medical condition. And that is inconsistent with what Congress intended. The cardinal rules of statutory interpretation have to be applied to this section. Congress used the term direct result in relation to a combat-caused injury. It chose not to in relation to hazardous service. So the court has to conclude that it meant a different standard to be applied. DTM, the Department of Defense, in the directive type memorandum, is applying a direct causation standard where Congress did not authorize it to do so, with the consequence that applicants are excluded. Going to the factual matter, I certainly strongly disagree with the conclusion of the medical advisor and the district court. He was not disabled after his bicycle accident in 1997. In fact, he flew for another nine years. He wasn't disabled after his bathroom fall. And there's no radiographic or medical evidence concerning his bathroom fall. But he was disabled after a period of sustained, of numerous deployments, a lot of flying time, both in a deployed environment and in a home environment. Look at the MRI results and you see those changes. They're tracked, basically, the deterioration of his spine. I don't think it's a reasonable conclusion. I don't think it was, for the board or for the court, to say that this was not more likely due to his flying activities, as opposed to just the natural progression of the disease. Okay. Any more questions? Any more questions? Thank you so much for your time. Thank you. Thank you both. The case is taken under submission.